Jerry **THERIOT**

v.

**AETNA CASUALTY AND SURETY COMPANY.**

**Civ. A. No. 9595.**

United States District Court
E. D. Louisiana,
New Orleans Division.

March 11, 1963.

Samuel R. Exnicios and Alvin J. Liska, New Orleans, La., for plaintiff.

Henry Alsobrook, Jr., of Adams & Reese, New Orleans, La., for defendant.

WEST, District Judge.

## REASONS FOR JUDGMENT

This suit was brought by complainant, Jerry Theriot, directly against respondent, Aetna Casualty and Surety Company, the liability insurer of Noble Drilling Company, under the provisions of Louisiana's Direct Action Statute, LSA–R.S. 22:655. Complainant sought recovery for personal injuries received on May 14, 1959, while employed by Noble on the drilling barge W.W. I, upon navigable waters within the jurisdiction of this Court. Recovery was sought upon three different grounds: (1) that his injuries were proximately caused by the unseaworthiness of the vessel W.W. I; (2) that his injuries were proximately caused by the negligence of Noble Drilling Company; and (3) for maintenance and cure.

The case was tried to a jury insofar as the claims of unseaworthiness and negligence were concerned, and the Court reserved to itself the question of complainant's right to maintenance and cure. After trial, the jury returned a special verdict wherein they found that while the barge, W.W. I, was a vessel, and while the complainant was a seaman and a member of the crew at the time of the accident, that nevertheless, the vessel was not unseaworthy and the respondent's assured, Noble, was not guilty of any negligence. Thus, complainant's demands were rejected insofar as his claims were based upon unseaworthiness and negligence. It was agreed between the Court and counsel that the same evidence adduced at the trial would be used by the Court in its determination of complainant's demand for maintenance and cure. In connection with this latter claim, the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

**1.**

Complainant was injured on May 14, 1959, while working aboard the drilling barge W.W. I, when a piece of pipe about five feet long, which was being used to obtain additional leverage on a wrench slipped off the wrench, flew thro rh the air and struck complainant on the back of his head.

**2.**

As a result of this accident, it is very likely that complainant suffered a slight concussion, together with a stiff neck.

**3.**

As early as May 29, 1959, or only fifteen days following the accident, Dr. Canale, a surgeon, conducted a neurological examination on complainant which he found to be negative. He found complainant suffering only from what he termed a "stuporis condition".

### 4.

On June 3, 1959, Dr. R. H. Corales, a neurosurgeon, reported no abnormal findings of any kind and no objective findings of injury or disability.

### 5.

On July 31, 1959, Dr. S. Winokur, who specializes in physical medicine, reported that complainant was still complaining of pain in his neck, but that by August 31, 1959, he found that all symptoms of stiffness in the neck were gone, and that all physical findings were negative by that date.

### 6.

There was testimony given by two psychiatrists to the effect that complainant suffered from a traumatic neurosis resulting from this accident. In view of complainant's past history, and in view of the fact that the evidence clearly established the fact that complainant suffered from personality disorders long prior to this accident, it is highly doubtful that his neurotic condition was in any way caused by the accident in question. However, whether his neurotic condition was or was not caused by the accident is immaterial now, because there is no doubt that in that respect, as well as in all other respects, complainant had reached maximum recovery at a date not later than August 31, 1959.

### 7.

Complainant had reached maximum recovery from any injuries or disabilities that he might have received as a result of this accident by August 31, 1959.

### 8.

By agreement of counsel, any maintenance to which complainant might be entitled should be paid at the rate of $8.00 per day.

### 9.

By agreement of counsel, the medical expenses incurred by complainant as a result of this accident were in the amount of $2,000.

### 10.

The respondent's assured did not at any time instruct or authorize complainant to seek medical attention at the Marine Hospital, and in fact, denied all the time that complainant was in fact a seaman working aboard a vessel such as to qualify him for such medical treatment.

## CONCLUSIONS OF LAW

### 1.

Jurisdiction over this matter is properly vested in this Court.

### 2.

A seaman is entitled to be paid maintenance and cure by his employer for injuries sustained while engaged in the services of his ship or vessel. This maintenance and cure is due from the time of the accident causing disability until such time as he has reached maximum cure or is beyond reasonable prospect for further improvement. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Hylton v. Standard Fruit & Steamship Co., D.C., 148 F.Supp. 234.

### 3.

From the evidence in this case, the Court concludes that by August 31, 1959, the complainant had reached maximum cure insofar as any injuries or disabilities that resulted from this accident are concerned, and he is therefore entitled to recover from the respondent, as maintenance, the sum of $8.00 per day, commencing on the date of the accident, May 14, 1959, and continuing to the date of maximum recovery, August 31, 1959, or the total sum of $872.

### 4.

Respondent's assured failed to provide complainant with the necessary medical treatment and therefore, complainant is entitled to recover from respondent, in addition to his maintenance, the sum of $2,000, representing the amount expended by him for the necessary cost of cure.

Judgment will be entered accordingly.