James B. ROBINSON, Plaintiff,

v.

PLIMSOLL MARINE, INC. and Allstate Insurance Company, Defendants.

Civ. A. No. 77–1636.

United States District Court,
E. D. Louisiana.

Oct. 12, 1978.

James A. Wysocki, New Orleans, La., for plaintiff.

Don M. Richard, New Orleans, La., for defendant Plimsoll Marine, Inc.

Edward J. Brandao, New Orleans, La., for defendant Allstate Ins. Co.

---

CASSIBRY, District Judge:

Plaintiff is employed by defendant, Plimsoll Marine, Inc., as a seaman aboard defendant's vessel, the M/V SPANISH FORT. On February 27, 1977, while the vessel was in navigable waters, plaintiff injured his lower back. This injury occurred while plaintiff was in the service of the vessel. Since that time he has received maintenance payments from defendant and its insurer at a daily rate of eight dollars ($8.00). On March 16, 1978 plaintiff was still considered to be "not fit for service" by the United States Public Health Service Hospital in New Orleans. Plaintiff asks for an increase in the daily rate of maintenance so that the amount received will cover his expenses of daily living ashore.

The right to maintenance and cure is the seaman's version of the shorebound employee's workmen's compensation. The original policies behind the right were to protect the seaman in this perilous industry and to induce men to enlist in the merchant marine. It is possible that the original policies behind maintenance and cure have diminished in importance and vitality. However, any change in the scheme is within the power of Congress rather than federal courts. It is still my function to insure that a seaman receives medical care for his illness or injury and fair and adequate payments for their maintenance during recovery.

In the present case, plaintiff has been receiving eight dollars per day because defendants say it is the "recognized rate" in this area. Eight dollars per day is a common figure in many districts. *See* M. Norris, The Law of Seaman § 607 n.8 (3rd ed. 1970). That figure has appeared in holdings in the Eastern District of Louisiana since at least 1965. *Murphy v. Panoceanic Faith*, 241 F.Supp. 540 (E.D.La.1965).

The amount of maintenance to which an injured seaman is entitled is a factual question. Various procedures have been used to determine the amount owed. Courts have measured how much would be necessary to provide meals and lodging ashore of the same character as those furnished aboard ship; how much the seaman has actually expended for meals and lodging; how much is agreed to in maritime contracts in the area, or how much meals and lodging "of a type that the injured seaman would normally require" would cost. *Hudspeth v. Atlantic & Gulf Stevedores, Inc.*, 266 F.Supp. 937, 944 (E.D.La.1967).

In 1968 in a similar case I took notice of the union contracts in this district as well as the frequency with which $8.00 was either stipulated or found to be reasonable here. *Duplantis v. Williams-McWilliams Industries, Inc.*, 298 F.Supp. 13 (E.D.La.1969). Ten years later, the picture is not nearly so clear. Although evidence has been presented regarding union contracts in the area, various provisions of union disability plans and pensions are interrelated with the contracts making it difficult to determine how much a sick or injured seaman normally requires or receives. All of the evidence presented indicates that it is more than $8.00.

Evidence on actual expenditures by plaintiff was similarly inconclusive. Depending upon which party interprets the data, his daily rate of expenditure is anywhere between $4.20 per day and $25.48 per day.

In *Solet v. M/V Capt. H.V. Dufrene*, 303 F.Supp. 980 (E.D.La.1969), Judge Alvin B. Rubin of this district determined that the evidence before him indicated that a proper maintenance rate would be $8.00 per day. That decision was rendered in August 1969. In the instant case, an expert witness in the field of economics testified as to the effects of inflation on expenditures for restaurant food and housing since August 1969. His conclusion was that an estimate of the present cost of meals and lodging that cost $8.00 in August 1969 is between $14.50 and $15.00 per day.

Considering all of the evidence at hand, I conclude that the proper maintenance rate is $15.00 per day. Defendants are ordered to pay plaintiff an amount equal to $15.00 per day from the date of injury to the present date minus whatever amount they have already paid him. Future payments of maintenance which are due, if any, will be paid at the rate of $15.00 per day.